UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW MEXICO

PAUL GAYLE SMITH,

    Plaintiff,

v.

LINDA WILSON, EDDIE WILSON, POND-S-SCAPES,

    Defendants.

Case No. 12-13396 T7
Adv. No. 12-1330 T

FILED at 8:46 o'clock A M
OCT 2 8 2013
United States Bankruptcy Court
Albuquerque, New Mexico

## AMENDED ANSWER TO COMPLAINT WITH COUNTERCLAIMS

1. Jurisdiction, Venue, and Parties:

   a. Deny.

   b. Admit.

   c. Admit.

   d. Neither admits nor denies because it calls for a legal conclusion.

2. Plaintiff claims:

   a. Deny

Plaintiff asserts:

    (1.) Defendant denies in that Plaintiff provided ineffective legal representation that bordered malpractice.

    (2.) Defendants deny and have calculated the Plaintiff's actual hours to be 230 hours which in terms of billable hours would be reduced to at most 150 billable hours. Furthermore, Defendants

prepared affidavits, performed research, and even delivered the documents to the courthouse.

(3.) Defendants deny.

(4.) Plaintiff had Defendants request letters from individuals, who had heard the television newscast, and Defendants did that in good faith. After receiving the letters two of the letter writers changed their minds and stated to the contrary that they had not heard/remembered the television broadcast. Fearing reprisal from the opposing side these letter writers state they had not written the letters during their depositions.

Note: If the proper cause of action had been filed by the Plaintiff on behalf of the defendants, the letters would never have been part of the lawsuit and the judge would never have attacked the defendants regarding the letters. Plaintiff failed to sue based on defamation per se or libel per quod.

(5.) Defendants deny.

(6.) Defendants admit they own almost no property but deny they ever represented themselves to have money or property.

(7.) Defendants deny and refute the inference by the Plaintiff.

(8.) Plaintiff was paid in money and kind for the work he performed and therefore, the defendants deny.

(9.) Defendants neither admit nor deny because it calls for a legal conclusion.

2

(10) Defendants neither admit nor deny because it calls for a legal conclusion.

## DEFENDANTS' COUNTERCLAIMS TO PLAINTIFF'S LAW

1. On July 1, 2007 the Defendants hired the Plaintiff because he held himself out as an expert on libel and slander cases.
2. On or about May 12, 2012 the Defendants filed a grievance against the Plaintiff with the NM Disciplinary Board. See Exhibit A.
3. On or about February 6, 2013 the Defendants filed a second grievance against the Plaintiff with the NM Disciplinary Board. See Exhibit B.
4. The Disciplinary Board contacted the Defendants and they agreed to go to arbitration in November of 2012.
5. On January 16, 2013 the Defendants received a letter from the Disciplinary Board stating that the Plaintiff did not respond to the request to go to arbitration. See Exhibit C.
6. On January 30, 2013 Defendants received a phone call from Lizeth Cera stating that Plaintiff indicated he would go to arbitration.
7. Defendants received a confirmation that they were going to arbitration but that they had to re-submit their paper work. See Exhibit D.
8. Defendants re-submitted all of their paper work; however the Plaintiff reneged on the agreement to arbitrate.
9. The basis of the Complaints was that the Plaintiff failed to bill the Defendants over the entire course of the civil case in which he represented them; he

3

doubled and multiple billed them on legal work; billed the Defendants for legal work performed by the Defendants; Plaintiff changed his hourly rate without notifying the Defendants from the written agreement the parties signed; and failure by the Plaintiff to offset $26,000 in landscape work done by the Defendants. See attached copies of complaints.

10. In addition, the Plaintiff lost the case because he filed under the wrong tort, i.e., Plaintiff should have filed the case based on defamation per se.

11. As a result of using the wrong tort the defendants became entangled in obtaining witnesses to show damages whereas if the Complaint had been filed on the correct tort, damages would have been presumed.

12. The result of the malpractice by the Plaintiff was a dismissal of the lawsuit with the Defendants bearing the costs.

13. The Plaintiff has submitted a bill for his services that totals $ 386,164.65. See Exhibit E.

14. Rule 16-105 NMSA states that the factors to be considered when determining whether a fee is reasonable is as follows:

(1.) the time and labor required, the novelty and difficulty of the questions involved, and the requisite skill required to perform the legal service properly. The Defendants' lawsuit involved the tort of defamation. The Plaintiff held himself out as an expert in the area of defamation. Therefore, his preparation should have been minimal. Even so he made the gross error of failing to file the correct tort, i.e., slander per se because the statements made was an inference of a criminal act.

4

Since it was televised on a national channel and on line, the Plaintiff should have proceeded with a lawsuit that assumed injury and then showed the extent of the actual damages.

(2.) The acceptance never precluded the Plaintiff from working on other lawsuits. In fact Defendants helped the Plaintiff file other lawsuits.

(3.) The fee customarily charged in the locale must be considered. The County of Doña Ana has a very low income level and consequently attorneys charge a lower fee.

(4.) The amount involved and the results obtained. The Plaintiff failed to be successful in the lawsuit and as a result the Defendants were forced into bankruptcy.

(5.) There were no time limitations.

(6.) The Plaintiff was referred by Prepaid Legal in Albuquerque as an expert in defamation cases.

(7.) Plaintiff's reputation was unknown because he was new to the area.

(8.) The written contract was for $150.00 per billable hour. The Plaintiff arbitrarily changed the fee to $275.00 per hour without notifying the Defendants and made it retroactive. There was never another written contract.

Therefore, under Rule 16-105 NMSA the Plaintiff's fee is unreasonable and therefore, the court should not order payment of the fee.

5

15. The Defendants told the Plaintiff they had have minimal resources and had previously filed for and obtained a reverse mortgage; which allowed them not to lose their home; said property presently has zero equity.

16. The only other assets the Defendants have include several older vehicles used to do landscaping.

17. The Defendants listed the Plaintiff's Legal Fee at $100,000 on the bankruptcy form because they had an email from him that the Bill was $100,000. However, they never received a Bill for his legal services directly from the Plaintiff.

18. Defendants have included an analysis of the Plaintiff's legal work, which they previously submitted to the Disciplinary Board and NM Bar for arbitration. See Exhibit F.

19. Defendants have paid the Plaintiffs the sum of $22, 166.88 in cash and $25,964.62 in kind- for landscaping. Exhibits G and H.

20. The Defendants hired the Plaintiff on a good basis that he was actually an expert in cases involving defamation.

21. Considering the mistake he made concerning the basis of the lawsuit, it is quite clear that the Plaintiff was not truthful as to his experience in filing lawsuits based on defamation.

22. If the Plaintiff had filed the lawsuit based on defamation per se, there is a distinct possibility that the Defendants would have prevailed with their case.

23. By holding out to the Defendants that he was an expert in defamation cases, the Plaintiff used a false statement in conducting his business.

6

24. The use of a false and misleading statement in order to secure business constitutes a violation of the New Mexico Unfair Trade Practices Act.

25. Such a violation subjects the Plaintiff to paying treble damages for the damages that the Defendants incurred.

26. In this case the Defendants lost a lawsuit the Plaintiff valued at $1,000,000.

27. In addition, the Defendants had to file bankruptcy thereby worsening their credit substantially.

28. Therefore, the Defendants loss includes not only the worth of the lawsuit but also the value of the damage to their credit from being forced into bankruptcy.

29. The Defendants received a discharge from a Chapter 7 Bankruptcy on January 25, 2013.

30. A debtor's **Section 343** Examination by the Trustee was held on October 23, 1012.

31. The Plaintiff was listed as a creditor and therefore, had the opportunity to challenge the discharge of debt against the Defendants at that time but failed to do so.

32. On October 23, 2012 Plaintiff had knowledge and the opportunity to challenge the exemption of the assets he was alleging secured his legal fee but did not do so.

33. Plaintiff waited until more than thirty days after the final discharge of the Chapter 7 Bankruptcy to file a Complaint alleging the Defendants committed fraud with regard to assets he alleged secured his legal fee.

7

34. The plaintiff never asked for additional time for fact finding before the discharge.

35. There were never any written documents securing any of Defendants' assets for payment of Plaintiff's legal fee.

36. Section 727(a)(4)(A) involves "either an affirmatively false statement or an omission from the debtor's schedule"; Defendants did neither.

37. "A party requesting revocation of a discharge has the burden of proving its lack of knowledge of the fraud before discharge, and a failure to carry this burden is fatal to the party's case." *6 Collier on Bankruptcy Section 727.15[3] at 727-76.*

38. If the Plaintiff had knowledge of the fraud before the discharge, as he claims he did, and sat on it then under the stated law he cannot have the bankruptcy discharge revoked.

39. Knowledge of the fraud exists "when the party seeking revocation first becomes aware of facts such that he is put on notice of a possible fraud" and such a potential plaintiff must thereafter show "due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of possible fraud." *376 B.R. at 542-43 (citing Lightfoot v. Landry (In re Landry), 350 B.R. 51, 56 (Bankr.E.D. La. 2006): Andersen v. Vereen (In re Vereen), 219 B.R. 691, 696 (Bankr. D.S.C. 1997)). See also Collier at Section 727.15[3]* (A creditor or trustee is required

8

to have exercised diligence in investigating the facts during the case, especially after having been put on notice of possible fraud.")

40. Therefore, there is no basis for revoking the discharge of the Defendants.

DEFENDANTS' ISSUES:

1. The legal fee was dischargeable in bankruptcy and there are no grounds to revoke the discharge.

2. The legal fee was unreasonable under Rule 16-105, NMSA, Fees and therefore cannot be enforced in its entirety.

3. The Plaintiff committed fraud by holding himself out as an expert thereby violating the Unfair Trade Practices Act and therefore, Defendants are entitled to damages against the Plaintiff.

WHEREFORE, the Defendants urge the Court to confirm the discharge of the legal fee of the Plaintiff and award the Defendants the sum of $1,000,000 for the losses they incurred as a result of the violation of the New Mexico Unfair Trade Practices Act.

Submitted by:

Linda Wilson, d/b/a,
Pond-S-Scape, Pro Se
1727 San Acacio
Las Cruces, N.M. 88001
Ph.(575) 523-7100

Submitted by:

Eddie L. Wilson, Pro Se
1727 San Acacio
Las Cruces, N.M. 88001
Ph.(575) 523-7100

9

I certify a copy of this pleading was mailed to Paul M. Gayle-Smith on October 28, 2013 by First Class U.S. mail.

*Linda Wilson*
Linda Wilson

10