UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re: LINDA WILSON and
EDDIE L. WILSON,

Debtors.                                                     No. 7-12-13396 TL

PAUL M. GAYLE-SMITH,

Plaintiff,

v.                                                           Adv. No. 12-1330 T

LINDA WILSON,
EDDIE L. WILSON,
and POND-S-SCAPES,

Defendants.

## MEMORANDUM OPINION

In this adversary proceeding Plaintiff seeks to have Defendants' debt declared nondischargeable under 11 U.S.C. § 523(a)(2). Defendants counterclaimed for damages caused by Plaintiff's alleged malpractice and violation of the New Mexico Unfair Practices Act. The Court conducted a trial on November 19-20, 2013 and took the matter under advisement. This is a core matter. For the reasons set forth below, the Court will deny all requested relief.

### I.   FACTS

The Court finds the following facts:

1.   In 2007 KVIA-TV, a television station in El Paso, Texas, broadcast a story about Defendants' landscaping business.

-1-

2. Shortly thereafter, Defendants retained Plaintiff at the rate of $150.00 per hour to sue KVIA-TV. It does not appear that the parties executed a written fee agreement.

3. Plaintiff filed an action for defamation against KVIA-TV on behalf of Defendants.

4. Plaintiff represented Defendants in the defamation action for about 5 years. During that time, he got to know them fairly well.

5. Plaintiff did not present Defendants with an invoice until September, 2012. Before that, Defendants made several payments to Plaintiff and provided him with landscaping services.

6. Between 2007 and 2012, Plaintiff increased his hourly rate from $150.00 to $275.00. It seems unlikely Defendants were aware of or consented to the new rate.

7. In February, 2012, Plaintiff attended a deposition in the defamation action.

8. At the deposition Plaintiff learned Defendants forged a letter from a fact witness. He also learned Defendants placed a lien on his house to secure payment for the landscaping services they provided.

9. Plaintiff stated that the deposition opened his eyes to Defendants' dishonest nature. In his closing argument, Plaintiff stated that after the revelations from the deposition, he could no longer believe Defendants. He also formed a belief that Linda Wilson was mentally ill.

10. Plaintiff became concerned that Defendants' behavior would jeopardize or reduce their recovery in the defamation action.

11. On February 16, 2012, Plaintiff demanded payment of his fees as a condition to continued representation. Plaintiff did not request a specific amount of money or present Defendants with an invoice.

12. In response, Defendants represented that they owned a home near Salt Lake City, Utah worth approximately $1 million. Defendants also made vague allusions to other investments and assets they owned, including a home in California or Florida. They promised to sell enough property to pay Plaintiff's legal fees if the fees were not paid as part of a defamation judgment.

13. In fact, Defendants' assets in February, 2012 included:

    (a) a home worth $289,000, encumbered by a $288,000 mortgage;

    (b) a vacant lot in Gardening City, Arizona worth several hundred dollars;

    (c) a retirement account worth $15,000 - $30,000;

    (d) a 1971 pickup truck; and

    (e) a 1991 Chevy Silverado.

14. Plaintiff had socialized with Defendants on several occasions and was familiar with their general lifestyle. He knew what type of cars Defendants drove and what type of house they lived in.

15. Defendants did not liquidate any assets or pay their bill as promised.

16. On May 23, 2012, the state court dismissed Defendants' defamation action as a sanction for falsifying evidence. The court found that Defendants had forged affidavits from fact witnesses and made numerous false statements under oath. The court

-3-

Case 12-01330-t    Doc 40    Filed 12/02/13    Entered 12/02/13 15:40:50 Page 3 of 9

also determined that Defendants' claims lacked merit because Defendants were public figures and the news report was likely true.

17. Defendants filed the above-captioned bankruptcy case on September 10, 2012.

18. Around that time, Plaintiff delivered to Defendants' bankruptcy counsel an invoice for $354,552.67. The invoice was the first and only invoice Plaintiff prepared.

19. The invoice reflects that Plaintiff billed the following time:

    (a)    39.75 hours in 2007;

    (b)    3.50 hours in 2008;

    (c)    17 hours in 2009;

    (d)    129.5 hours in 2010;

    (e)    450.75 hours in 2011; and

    (f)    751.25 hours in 2012.

20. The invoice reflects 22 entries where Plaintiff billed 14 or more hours a day. At least once, Plaintiff billed over 20 hours in one day.

21. Plaintiff and Defendants testified at trial. The Court had doubts about the credibility of portions of each party's testimony.

## II.    DISCUSSION

A.    Plaintiff's § 523(a)(2)(A) Claim.

Exceptions to discharge are "narrowly construed [such that] doubt as to the meaning and breadth of a statutory exception is to be resolved in the debtor's favor." *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, 2008 WL 8677441, at *2 (10th Cir.

2008) (quoting *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997)).

A creditor seeking to except its debt from a debtor's discharge under § 523(a)(2)(A) must prove, by a preponderance of the evidence:

    (1)    the debtor made a false representation;

    (2)    the debtor made the representation with the intent to deceive the creditor;

    (3)    the creditor relied on the representation;

    (4)    the creditor's reliance was reasonable; and

    (5)    the debtor's representation caused the creditor to sustain a loss.

*Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 792 (10th Cir. 2009) (quoting *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996)).

To determine whether a creditor's reliance was reasonable, the Court must examine the qualities and circumstances of the plaintiff and evaluate "whether … [his] reliance was 'justifiable' from a subjective standpoint." *Riebesell,* 586 F.3d at 791 (citing *Field v. Mans*, 516 U.S. 59, 74-75 (1995)). Even though the test is subjective, the movant must "use his senses and at least make a cursory examination or investigation of the facts of the transaction before entering into it." *Id.* The test "does not leave objective reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the objectively reasonable, the greater the doubt about reliance in fact." *Id.* Objective reasonableness is still "relevant to the probability of actual reliance." *Id.*

Here, Defendants promised to liquidate their "million dollar home" in Utah and various other assets to pay Plaintiff's fees after he threatened to withdraw in February,

2012.[1]  The Court finds that to the extent Plaintiff relied on these representations, the reliance was not justifiable.  At the time Defendants made the statements, Plaintiff admitted Defendants were not trustworthy.  He admitted that the "veil was lifted" by opposing counsel at the deposition and that Defendants were "no longer believable" at that time.  He also thought Linda Wilson was mentally ill, and that her mental illness caused her to say things that weren't true.  Nevertheless, Plaintiff claims he accepted Ms. Wilson's assertions about her Utah house without making the slightest investigation.  The Court is unwilling to believe that Plaintiff was skeptical of everything Defendants told him *except* for their ability to pay his legal fees.  Instead, the evidence suggests that Plaintiff remained in the case because he believed that litigating the defamation action to judgment was his best chance of getting paid.

Moreover, the evidence regarding the amount of Plaintiff's nondischargeable claim is unsatisfactory.  There is no evidence of any written fee agreement.  Plaintiff prepared a single invoice after representing Defendants for five years, and only after he had withdrawn from the representation.  Such billing practices are unacceptable.  When Defendants asked Plaintiff for an invoice, he brushed them off.  Further, Plaintiff increased his hourly rate by 83% between 2007 and 2012, without notifying Defendants of the increase.  In addition, there is no evidence Plaintiff kept contemporaneous time records.  On many occasions Plaintiff billed between 14 and 20 hours per day.  The billing entries are very cursory and incomplete.  Based on these facts, the Court is not

---

[1] Defendants may have alluded to their wealth throughout the parties' relationship, but there is no reliable evidence they did so.  The only evidence presented at trial related to Defendants' representations following the February 16, 2012 deposition.  Consequently, there is insufficient evidence upon which to make a finding of fraud under § 523(a)(2)(A) based on any alleged misrepresentations before February, 2012.

-6-

able to determine how much time Plaintiff actually billed after February, 2012, or what a reasonable fee would be.

Based on the evidence presented at trial, the Court concludes that Plaintiff has not satisfied the elements of the § 523(a)(2)(A) exception to dischargeability.

B. <u>Defendants' Malpractice Counterclaim</u>.

Under New Mexico law, a claim for legal malpractice requires proof of the following elements:

(1) the employment of the defendant attorney;

(2) the defendant attorney's neglect of a reasonable duty; and

(3) the negligence resulted in and was the proximate cause of loss to the client.*Encinias v. Whitener Law Firm, P.A.*, 310 P.3d 611, 616 (N.M. 2013) (internal quotation marks omitted). To satisfy the third element, the movant must "demonstrat[e] by a preponderance of the evidence that he or she would have prevailed on the underlying claim" but for the attorney's negligence. *Id. See also Richardson v. Glass*, 114 N.M. 119, 122, 835 P.2d 835, 838 (1992) ("Plaintiff had the burden of not only proving her counsel's negligence, but also that she would have recovered at trial in the underlying action.").

Here, Defendants contend Plaintiff committed legal malpractice by asserting a claim for defamation rather than defamation per se. They argue that had the case been properly pled, they would not have had to prove damages. This argument is unavailing. "New Mexico law requires plaintiffs to prove actual injury to reputation for recovery in *all* defamation cases," including those involving defamation per se. *Smith v. Durden*, 276 P.3d 943, 948 (N.M. 2012) (emphasis added).

Further, the defamation action was dismissed as a sanction for falsifying evidence. The state court also determined that the claim lacked merit because Defendants were public figures and the news report was likely true. Defendants have therefore failed to demonstrate that they would have prevailed on the underlying claim but for Plaintiff's alleged negligence.

C. <u>Defendants' Unfair Trade Practices Counterclaim</u>.

The New Mexico Unfair Practices Act, N.M.S.A. § 57-12-1 et seq., ("UPA") "is designed to provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 166 P.3d 1091 (Ct. App. 2007). Under the UPA, the plaintiff must prove:

(1) the defendant made a statement that was false or misleading;

(2) the representation was knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts;

(3) the conduct must have occurred in the regular course of the defendant's trade or commerce; and

(4) the representation was of the type that may, tends, or does deceive or mislead.

*Dellaira v. Farmers Ins. Exchange*, 136 N.M. 552, 558, 102 P.3d 111, 117 (Ct. App. 2004); *Stevenson v. Louis Dreyfus Corp.,* 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) (internal quotation marks omitted).

Defendants argue that Plaintiff lied about being an expert on defamation law to attract their business. Plaintiff testified that he did not hold himself out as a defamation

law expert, only that he was competent to prosecute a defamation case. Further, while the Court cannot condone Plaintiff's billing practices, there was no evidence presented at trial that Plaintiff did not properly bring the defamation action. The Court finds that Defendants did not carry their burden of proving that Plaintiff made a false or misleading statement. Consequently, the Court finds that Defendants has not satisfied the requisite elements under the UPA.

### III. CONCLUSION

All requested relief is denied. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. The Court will enter an appropriate judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered on: December 2, 2013.

Copies to:

Paul M. Gayle-Smith
Law Office of Paul M. Gayle-Smith
2961 Sundance Circle
Las Cruces, NM 88011

Linda Wilson
1927 San Acacio
Las Cruces, NM 88001

Eddie L. Wilson
1927 San Acacio
Las Cruces, NM 88001