IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

**PAUL M. GAYLE-SMITH,**
    **Plaintiff,**

                                       CASE NO. 12-13396 T7

                                       ADV. NO. 12-1330 T

**v.**

**LINDA WILSON, EDDIE L. WILSON,**
**POND-S-SCAPES,**

    **Defendants.**

## PLAINTIFF'S MOTION FOR RECONSIDERATION AND MOTION TO CORRECT THE RECORD

Plaintiff, Paul M. Gayle-Smith, a creditor of the debtors Linda Wilson, Eddie L. Wilson, and Pond-S-Scapes (Defendants), files this motion for reconsideration and motion to correct the record. Plaintiff states as follows:

### SUMMARY

The Court's ruling seems to be based on its unexpected decision to believe (and rely upon) parties (Defendants) although it simultaneously found that Defendants made false representations regarding real estate they claimed to own (and that they would liquidate at the end of litigation to pay attorney fees not covered by either a settlement or judgment) and that Plaintiff's unfortunate reliance on the aforementioned misrepresentation of those same individuals was not justified. This is somewhat illogical. Also, the Court has chosen to believe the representations of individuals (Defendants) who have been found to have committed perjury in the litigation that was the basis of Plaintiff's earning

the legal fees that constituted the substantial debt that Defendants fraudulently sought to completely discharge in bankruptcy. And despite Defendants having made several statements during the trial which are clearly untrue and unbelievable.

Also, Plaintiff has been a licensed attorney for more than 20 years (seven years in New Mexico) and has never been subjected to professional discipline or committed or been found to have committed any misconduct in any state. Defendants, on the other hand, have a proven history of perjury (as found by a state court judge in 2012 and introduced as evidence during this bankruptcy-related proceeding) and other significant factual misrepresentations. Moreover, since Plaintiff is the only African-American attorney for more than two hundred miles in any direction within the State of New Mexico, it is even more important to the profession that the Court be given the opportunity to correct false, misleading and defamatory statements in its ruling.

## **COURT'S FINDINGS OF FACT**

1. Regarding the court's finding of fact no. 2, this finding incorrectly states the testimony given at trial. Specifically, Plaintiff testified that there was a written contract and that Defendants breached the contract.

2. Regarding the court's finding of fact no. 4, this finding incorrectly states the testimony given at trial. Specifically, there was no testimony that Plaintiff ever socialized with Defendants or that he had any opportunity to "know them fairly well."

3. Regarding the court's finding of fact no. 6, this finding incorrectly states the testimony given at trial. Specifically, Plaintiff testified that Defendants breached the original written fee agreement. Plaintiff had given Defendants a reduced rate of $150 per hour and informed them that they had forfeited the reduced right by failing to pay the full requested retainer for

over twelve months. Moreover, a written fee agreement is not required to obtain a reasonable fee in the State of New Mexico.

4. Regarding the court's finding of fact no. 8, this finding incorrectly states the testimony given at trial. Specifically, Plaintiff testified that Defendants had fraudulently placed the lien on the house because they knew that they actually owed him more than the market value of any landscaping services they had provided. Defendants testified that they had not informed Plaintiff of the lien.

5. Regarding the court's finding of fact no. 9, this finding incorrectly states the testimony given at trial. Specifically, Plaintiff testified that he now believes that Linda Wilson is mentally ill. Plaintiff did not testify that he believed Defendant Linda Wilson was mentally ill at any time before she made bizarre comments after the court had sanctioned her and dismissed her law suit with prejudice.

6. Regarding the court's finding of fact no.11, this finding presents the testimony given at trial in a somewhat misleading manner. Specifically, neither Plaintiff nor Defendants testified regarding whether Plaintiff had stated a specific amount as the total amount of attorney fees due. Nor did the court inquire into this matter (although the court did question the Defendants during trial regarding other matters). In actuality Plaintiff had agreed to accept a "a substantial payment" which would cover some of his attorney fees and serve as a retainer for the hundreds of attorney hours which were correctly expected to be required within the next two months.

7. Regarding the court's finding of fact no. 14, this finding incorrectly states the testimony given at trial. Specifically, there was no testimony that Plaintiff ever socialized with Defendants or that he had any opportunity to "know them fairly well." Defendant Eddie

Wilson testified that he had paid for a number of lunches or dinners for Plaintiff during which their case was discussed. In fact, the only purpose of any of these lunches (which probably numbered less than 9 or 10) was specifically to discuss issues in Defendants' case. The lunches and dinners always preceded or followed a court hearing or other important case-related deadline. There was no "socializing" and Plaintiff had no opportunity to observe the "general lifestyle" of either defendant.

Plaintiff did not testify that he knew what "type of cars Defendants drove." There was no testimony that Plaintiff knew "what type of house [Defendants] lived in." Plaintiff never socialized with Defendants and had no opportunity to learn (or reason to inquire) what type of cars Defendants drove or owned.

8. Regarding the court's finding of fact no. 16, this finding incorrectly states the testimony given at trial. Specifically, the trial Judge James T. Martin ruled (very incorrectly) that Defendants were limited-purpose public figures (not public figures) and (again very incorrectly) that the "gist" of news report was "substantial true".

9. Regarding the court's finding of fact no. 18, this finding incorrectly states the testimony given at trial. Specifically, testimony established that Defendants never paid the balance of Plaintiff's attorney fees and that Plaintiff never demanded nor received any payments to which he was not entitled.

10. Regarding the court's finding of fact no. 20, this finding appears to suggest that the hours billed are inaccurate but this misrepresents the testimony given at trial. Specifically, Plaintiff testified that there were several days in which he slept for just an hour or two and worked on Defendants' case every waking hour. This is true and Defendants provided no

4

contrary testimony. Instead, Defendants testified that they did not know how I could have spent so much time on their case if I had other clients. That was not evidence of anything material to the accuracy of Plaintiff's invoice or to the balance of this case.

Moreover, the court did not review a single piece of work completed by Plaintiff on any of the days to which it makes defamatory reference. As such, the court had no actual or legal basis to even question the accuracy of any of the billing entries.

11. Regarding the court's finding of fact no. 21, this finding appears misleading. Specifically, with regard to the testimony of Plaintiff, it appears that the court had doubts only about whether Plaintiff's reliance on the false representations of Defendants was "objectively justifiable or reasonable." This should perhaps not have been characterized as a "doubt[] about the credibility of portions of [Plaintiff's] testimony.

12. Regarding the court's finding of fact in footnote no. 1, this finding incorrectly states the testimony given at trial. Specifically, Plaintiff's testimony established that Defendants had made similar misstatements about their alleged Utah and California or Florida (not Arizona) properties from near the beginning of the legal representation in 2007. Defendants had made probably hundreds of important assertions since 2007 almost all of which Plaintiff believed (and still believes) to have been true.

13. The Court states on page 6 of its ruling that Plaintiff testified that he did not believe anything that Defendants said after February 16, 2012 but that is inaccurate. Moreover, if Plaintiff thought that everything Defendants said at any time was untrue he would have withdrawn from the legal representation immediately. The court appears wittingly or otherwise to punish Plaintiff for his compassionate decision to stick by his clients whom he

believed that committed perjury because of extreme stress and desperation. Again, in February 2012, Plaintiff did not think that Defendant Linda Wilson had a mental illness that made her incapable of telling the truth. Plaintiff never testified about anything like that and it is simply inaccurate.

14. The Court states on page 6 of its ruling that Plaintiff "remained in the case because he believed that litigating the defamation action to judgment was his best chance of getting paid." However, there was no evidence to support the court's finding. This finding is perhaps very "convenient" for a bankruptcy court to make but it is unfair and goes against the weight of the credible evidence adduced in the matter. Rather, Plaintiff continued to work for his clients because he believed them to be good Mormons (as they professed to be) and that they had simply committed a grave (but singular) error of judgment when they (on the same day it appears) decided to forge two documents regarding some of the damages they had sustained because of the defamation that was the subject of their original 2009 legal claims.

15. The Court states on page 6 of its ruling that Plaintiff never provided Defendants a written fee agreement but even Defendants did not state anything of the sort. Rather, Plaintiff testified and repeated in his closing argument that there had been a written contract whci Defendants breached in 2007. The Court has completely glossed over the fact that Defendants were sophisticated business people who would never have kept an attorney who refused to provide them with written invoices for more than 5 years. This is just not believable, although the Court believed it.

16. The Court states on page 6 of its ruling that Plaintiff increased his fee significantly without informing Defendants. However, Plaintiff testified that he had initially given Defendants a

6

25% discount of his usual fee as was stated in the original written contract. Moreover, New Mexico law permits an attorney to raise his fee every year provided the resulting fee is "reasonable" in the circumstances. The court did not find that the hourly rate or fee was excessive given the quality and amount of the work actually done and the time frames and other circumstances in which the work was done.

17. Plaintiff testified at trial that the NM Disciplinary Board had looked at his invoice and a large and random sample of the work he had performed and determined that Plaintiff had not committed any misconduct. In fact, the attorney who conducted the investigation actually made a complimentary remark about Plaintiff's professionalism and the work she had reviewed. The Court makes no reference to any of this testimony in its ruling and instead makes its own unsupported comments.

18. The court could have made a determination of a reasonable fee if it had made a single inquiry about the work actually performed by Plaintiff instead of stating that some of his billing entries were "cursory and incomplete." As a result of the court's ruling, known perjurers were legally permitted to walk away from a substantial debt that even the bankruptcy law states should have been nondischargeable because of Defendants' fraudulent behavior.

RESPECTFULLY SUBMITTED this 16th day of December 2013.

*/s/ Paul M. Gayle-Smith*

PAUL M. GAYLE-SMITH
Pro se

Law Offices of Paul M. Gayle-Smith
2961 Sundance Circle
Las Cruces, NM 88011
elawyer@gayle-smith.com
tel. 575.522.8300
fax. 866.324.3783

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO


**PAUL M. GAYLE-SMITH,**
       **Plaintiff,**

                                CASE NO. 12-13396 T7

                                ADV. NO. 12-1330 T

**v.**

**LINDA WILSON, EDDIE L. WILSON,**
**POND-S-SCAPES,**

       **Defendants.**


## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2013, I filed a copy of the foregoing document through the court's CM-ECF system for service on all parties and counsel of record, if any, and that I will mail or email a copy to Defendants at their last known address, 1927 San Acacio, Las Cruces, NM 88001 or to Defendants at the following email address:market@zianet.com.

                                                              _/s/ Paul M. Gayle-Smith_

                                                        Paul M. Gayle-Smith
                                                        Pro se
                                                        Law Offices of Paul M. Gayle-Smith
                                                        2961 Sundance Circle
                                                         Las Cruces, New Mexico 88011
                                                        t. 575.522.8300  f. 866.324.3783
                                                        elawyer@gayle-smith.com